UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JACQUELINE B.,[1]

    **Plaintiff,**

v.

MARTIN J. O'MALLEY,
**Commissioner of Social Security,**

    **Defendant.**

Case No. 2:22-cv-3701
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Jacqueline B. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

I.  **PROCEDURAL HISTORY**

On July 6, 2018, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she has been disabled since March 18, 2018. R. 80–81, 104–05, 290–304. The applications were denied initially and upon reconsideration. R. 106–17, 121–26. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 127–34. ALJ Peter Lee held a hearing on April 28, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 38–61. In a decision dated May 20, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from March 18, 2018, Plaintiff's alleged disability onset date, through the date of that decision. R. 15–31. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 20, 2022. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 17, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 13.[3] On March 21, 2023, the case was reassigned to the undersigned. ECF No. 14. The matter is ripe for disposition.

II.  **LEGAL STANDARD**

  A.  **Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of

3

social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

4

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 53 years old on her alleged disability onset date. R. 29 (noting that age 53 is defined as an individual closely approaching advanced age and that Plaintiff subsequently changed age category to advanced age). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between March 18, 2018, her alleged disability onset date, and the date of the decision. R. 18.

At step two, the ALJ found that Plaintiff's epilepsy, depressive disorder, and substance abuse disorders were severe impairments. *Id*. The ALJ also found that Plaintiff's diagnosed lupus, in remission; mild osteoarthritis ("OA"), right hip; and hypertension were not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18–22.

At step four, the ALJ found that Plaintiff had the RFC to perform medium work subject to various additional limitations. R. 22–29. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a manager, fast food services. R. 29.

At step five and relying on the testimony of the vocational expert, the ALJ found that a

significant number of jobs—*e.g.,* jobs as a packager, a linen room attendant, and a laborer—existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 29–30. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 18, 2018, her alleged disability onset date, through the date of the decision. R. 30–31.

Plaintiff disagrees with the ALJ's findings at steps two and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 11. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 12.

### IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

On October 11, 2018, Judy M. Iturmendi, Psy.D., conducted a consultative psychological examination of Plaintiff. R. 510–13. Dr. Iturmendi noted that Plaintiff arrived a "couple of hours early for her appointment, unaccompanied" and that her "[h]ygiene and grooming were effective and she was dressed appropriately for age, weather and setting." R. 510. Dr. Iturmendi also noted that Plaintiff was a poor historian, but cooperative. *Id*. On mental status examination, Dr. Iturmendi noted as follows:

> She was alert and oriented x 5 (person. place, time, familiar objects, and situation). Her affect was euthymic and appropriate for situation and setting. Her reported mood was anxious and depressed. Her speech and thoughts were coherent and linear with no signs/behaviors suggestive of an active thought disorder, but she endorsed perceptual disturbances. She acknowledged suicidal ideations without a plan or intent; last time was yesterday. She denied homicidal ideations/impulses. She endorsed auditory hallucinations in which she hears voices with whom she converses, but she does not recall what the conversations have been. First time this

happened was a year ago and the last time was a couple of days ago. She endorsed visual hallucinations in which she "constantly see a person moving out of the corner of my eye." First time she had the vision was a year ago and the last time was yesterday. She denied paranoia and other delusional thoughts.

**Attention and concentration**
Her level of attention and concentration was intact and appropriate as she was able to spell *world* forward and backwards, and able to count backwards from 49 to zero by serial sevens.

**Memory**
Immediate recall was adequate for recalling aurally presented numerical digits forward (5 digits). And intact and appropriate for manipulating a different set of digits and recalling them backwards (5 digits). <u>Short-term memory, which reflects ability to learn new information, was seriously impaired as she was able to recall two of the three words (Shoe, Flag, and Tree previously registered) at one minute, but only one of the three words at five minutes. Her performance suggests she may experience some real challenges with encoding and retrieval at a level that could impact her acquisition of new information.</u>

Recent memory, recent past memory, and remote memory were intact and appropriate as she was able to recall specific information from yesterday, back a few months (including the last two calendar holidays). and back to middle childhood.

**Language comprehension**
Expressive language skills were intact and appropriate as she was able to repeat five words as instructed (*No ifs, ands, or buts*), In addition, for receptive language skills she was able to read and follow a simple one-step instruction (*close your eyes*), and to listen and follow a simple multistep verbal instruction (*Pick this piece paper up off the desk, fold it in half, and put it down on the desk*).

**Fund of Knowledge**
Her fund of knowledge was intact and appropriate for information on local culture (*Name a local professional sports team, from NY or NJ and any sport*), geography (*where do all the presidents of the United States live*), and well-known persons (*who was Martin Luther King, Jr, or If President Ohama is the 44th president, who was the 42nd president?*), but less so for historical events (*Why do we celebrate the 4th of July, if answered correctly ask, and from whom was independence gained; How many US presidents have been assassinated?*). She was aware of who Martin Luther King, Jr, was, and able to determine the identity of the 42nd president with the stimulus prompt provided. She was aware of why the 4th of July is celebrated, but did not know from whom America declared its independence, and responded, "France." She was aware of how many US presidents have been assassinated. She was able to solve a simple oral math problem (*How many quarters are in $1.75*), within seconds. She was able to recall two of three States in the U.S. that start with

9

the letter "C."

**Abstract thinking/reasoning**
She was unable to analyze and interpret two typically known proverbs, one (*Don't cry over spilled milk*) of which measures mature resignation and priorities, and the other (*A bird in the hand is worth two in the bush*) which measures *caution, realistic hopes/plans*. Her interpretations of both proverbs were vague, simplistic, based on the appearance of the stimuli, and incorrect. <u>Her performance suggests she may experience real challenges with this form of abstract verbal thinking/reasoning and problem solving.</u>

**Social insight/judgment**
Her social insight and judgment was intact and appropriate for how to respond to a specific situation in a structured setting (*What are you supposed to do if you find a purse or wallet in a store*), and for how to respond to the same situation in an unstructured setting (*If you found it on the street*). She denied having difficulty making decisions. Based on her responses her social insight and judgment are intact and appropriate, and based on her history her overall insight is limited and judgment is poor.

R. 510–11 (italicized emphasis in the original and underlined emphasis added). Dr. Iturmendi went on to summarize her findings and recommend as follows:

**SUMMARY AND RECOMMENDATIONS:**
Ms. B[.]'s mental control and functioning were challenged across a few areas assessed. She exhibited mild impairments in fund of knowledge that should not impact her functioning in most areas of day-to-day tasks, including employment. <u>However, she exhibited more serious impairments in encoding and retrieval for short-term memory and abstract verbal thinking/reasoning and problem solving that may impact her cognitive abilities in various employment settings</u>. She acknowledged a continued use of opiates and it cannot be determined in this brief situation and setting how much her illicit substance use is contributing to her mood disturbance. She expressed experiencing anxiety and depression and grieving over the death of her mother. She may benefit from her individual therapy having a dual diagnoses cognitive behavioral orientation that focuses on coping, mood stabilization, grief counseling, motivational interviewing for relapse prevention. problem solving, and cognitive reframing. She may also benefit from exploring complementary mind-body techniques such as acupuncture, biofeedback. and yoga. Due to her reported active perceptual disturbances she may not benefit as much from meditation and hypnosis at this time. Based on her history her prognosis is poor, but based on her current mental status functioning, her prognosis is guarded.

**ABILITY TO MANAGE FUNDS:**
She is able to manage her own funds intellectually, but due to her challenges with opiate relapses it would not be in her best interest to be allowed to manage her own

funds at this time.

R. 512 (emphasis by underlining added).

## V. DISCUSSION

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination for a limited range of medium work for a number of reasons, including the argument that the ALJ improperly omitted all the limits opined by the consultative psychological examiner, Dr. Iturmendi. *Plaintiff's Brief*, ECF No. 11, pp. 10–12. For the reasons that follow, this Court concludes that the ALJ's RFC determination is not supported by substantial evidence, but for reasons slightly different from those raised by Plaintiff. *Cf. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 601097, at *2-3 (E.D. Pa. Feb. 16, 2021), *reconsideration denied sub nom. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 1175134 (E.D. Pa. Mar. 29, 2021) ("This unexplained mistake is a clear, reversible error that this court has addressed *sua sponte*.") (citations omitted); *McNeal v. Comm'r of Soc. Sec.*, No. CIV.A. 10-318-J, 2012 WL 1038898, at *3 (W.D. Pa. Mar. 28, 2012) ("The Court does not reach any of the issues raised by Plaintiff but finds that remand is warranted on grounds not raised by the parties.").

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554

(3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In addition, the ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[4] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including

---

[4] As previously noted, Plaintiff's claim was filed on July 6, 2018.

controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

    The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

    The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior

13

administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b), 416.920c(b).

At step four of the sequential evaluation process in the present case, the ALJ found that Plaintiff had the RFC to perform a limited range of medium work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can never climb ladders, ropes or scaffolds; never be exposed to unprotected heights or hazardous machinery; have occasional contact with supervisors, coworkers and the public; and is able to do only simple and routine tasks.

R. 22. In reaching this determination, the ALJ found, *inter alia*, that Dr. Iturmendi's opinions had "some persuasive value[,]" reasoning as follows:

> In the report from psychological CE of October 11, 2018, Dr. Iturmendi opined that the claimant exhibited "mild" impairments in fund of knowledge that should not affect her functioning in "most" day-to-day tasks, including employment; however, "more serious" impairments were noted in encoding and retrieving for short-term memory, and abstract verbal thinking/reasoning and problem solving, which "may impact her cognitive abilities in various employment settings" (see 4F/3). This opinion has *some persuasive value as **it is supported by objective CE findings (4F/2), and is consistent with other medical evidence and the claimant's hearing presentation**. However, I find the overall opinion is not consistent with the residual functional capacity that limits the claimant to simple and routine tasks, as well as only occasional social interactions. Thus, while persuasiveness of this opinion is limited due to its narrow scope and basis on a 1-time evaluation, it is persuasive to the extent compatible with the limitations assessed herein.*

R. 28 (emphasis added).

Substantial evidence does not support the ALJ's consideration of Dr. Iturmendi's opinion. As set forth above, the two most important factors to consider when evaluating the persuasiveness of any opinion is supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2); *see also Lynch v. Comm'r Soc. Sec.*, No. 23-1982, 2024 WL 2237961, at *2 (3d Cir. May 17, 2024) ("The two most important factors are supportability and consistency.") (citing 20 C.F.R. § 404.1520c(b)(2)). The ALJ in this case expressly found that

14

Dr. Iturmendi's opinion met that standard. R. 28. In other words, the ALJ, after considering the two most important factors, found Dr. Iturmendi's opinion to be persuasive. *See id*. However, the ALJ then discounted that persuasive opinion on the ground that it was inconsistent with the ALJ's own opined RFC limitations. *Id*. In other words, the ALJ rejected this opinion merely because he disagreed with the opinion. *See Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (explaining that a Court cannot affirm an ALJ's decision if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result") (internal quotation marks and citations omitted).

To the extent that the ALJ may have also discounted Dr. Iturmendi's opinion because it was "limited due to its narrow scope" and because it was based on a one-time evaluation, such reasoning is also unavailing. Although an ALJ may consider the examining relationship and other factors that tend to support or contradict a medical opinion, *see* 20 C.F.R. §§ 404.1520c(c)(3)(v), (c)(5), 416.920c(c)(3)(v), (c)(5), it is the supportability and consistency factors that are most important in the evaluation of a medical opinion. *Id*. at §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2); *Lynch*, 2024 WL 2237961, at *2. This Court concludes that the ALJ erred to the extent that he elevated other factors and discounted an opinion that was otherwise supported and consistent with record evidence. *See id*.

This Court therefore concludes that remand of the matter for further consideration is appropriate.[5] Moreover, remand is appropriate even if, upon further examination of the evidence and consideration of the RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at

---

[5] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Iturmendi's opinion and of the RFC determination, the Court does not consider those claims.

\*8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at \*4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at \*10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

### VI.   CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  June 25, 2024                              *s/Norah McCann King*
                                                  NORAH McCANN KING
                                                  UNITED STATES MAGISTRATE JUDGE